IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34334-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EDUARDO CHAVEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Eduardo Chavez appeals from a conviction for second degree rape, arguing that the trial court erred in excluding evidence concerning the young victim's reputation for honesty in her school community. Since the defense did not establish a proper foundation for the testimony, the trial court did not abuse its discretion by excluding the proposed evidence. The conviction is affirmed.

## FACTS

The prosecutor filed a charge of second degree rape predicated on A.S.'s inability to consent due to incapacity. The charge arose from an incident occurring after 15-year-old A.S. ran away from her home in Milton-Freewater, Oregon following a dispute with her father. She eventually ended up in the home of Jesus Torres in Walla Walla where

she consumed liquor and smoked marijuana.[1] The youth became quite intoxicated and shaved her eyebrows and cut her hair in an effort to change her appearance. Torres, a "known sex offender," later walked her to the nearby home of Eduardo Chavez so that A.S. had a place to sleep. Mr. Chavez would soon turn 17.

Chavez provided A.S. a bed in a room where two people were sleeping in another bed; he left to sleep elsewhere in the house. A.S. awoke the next morning with her shirt pushed up and her jeans twisted around her ankles and unzipped; her hips felt sore. She was still very intoxicated. Torres arrived at the house and gave A.S. a ride to her boyfriend's house in Milton-Freewater. During the ride, the two younger girls (M.B. and A.B.) noted that A.S. had hickeys on her neck, a fact that embarrassed A.S. She commented that she may have been raped.

After her father picked her up from her boyfriend's home and returned her to her home, A.S. got into a fight with her grandmother and left the house again. This time she went to the nearby home of her friend, S.B. There she explained that she thought she might have been raped. S.B. reported the comment to her mother, who in turn called A.S.'s grandmother. The police were called and A.S. was directed to go to the hospital the following morning to undergo a sexual assault exam.

---

[1] There was testimony that A.S. and two younger friends (M.B. and A.B.), a week prior to the incident, had gone with Torres to a hotel room in Walla Walla and spent the night drinking and smoking marijuana.

DNA belonging to Mr. Chavez was recovered from A.S. He initially denied that police would find his DNA, but after being told they had done so, Mr. Chavez told detectives that the couple had engaged in intercourse at A.S.'s suggestion and with her consent. He later explained to jurors that it was common for girls to take their clothes off and throw themselves at him when they first met him. A 14-year-old friend, M.R.-G., testified that she was at Chavez's home and could hear the couple engaging in sex and that the girl was "moaning."[2]

A.S. was a freshman at "Mac-Hi" at the time of trial. Report of Proceedings (RP) at 154. She previously had spent part of her eighth grade year at Weston Middle School. Before that she had been in school at Central and at Ferndale. S.B., who was one school year younger, had been in the same schools with A.S. during some of those years. RP at 195-197. A.S. testified that she drank "a lot" of vodka and did not remember engaging in sexual intercourse, let alone consenting to it. Her grandmother testified that even at the hospital, a day after the incident, A.S. "reeked of alcohol," "appeared to be in a fog," and acted like she was hungover. RP at 143-144, 149.

During the testimony of S.B., the defense used cross-examination to attack the credibility of A.S. S.B. told jurors that A.S. "smiled" when she disclosed she thought she

---

[2] M.R.-G.'s testimony that the girl was enjoying herself was twice stricken from the record.

had been raped. S.B. also testified that A.S. had told several people at a skateboard park

that she had been raped; A.S. denied having done so. The defense also attempted to have

S.B. opine concerning A.S.'s reputation for honesty at school.

S.B. is a year behind A.S. in school and had attended the same schools for several

years, although A.S. had only been at Weston for part of her eighth grade year. The

following exchange between S.B. and defense counsel occurred:

Q Okay. And you have gone to school with her off and on since at least
   second grade down at Ferndale?
A Yes.
Q And then you went to school with her at Central?
A Yes.
Q And then you went to school with her down at Weston?
A Yes.
Q And during that time if you added up all the students in all the grades
   that you had been with her, you have been around probably at least a
   hundred different people that had interaction with you and her; isn't that
   right?
A Yes.
Q And were you aware of her reputation in the school community—

RP at 298-299. The prosecutor objected and an extended discussion took place outside

the presence of the jury at which both sides questioned S.B. After hearing the testimony

and argument of the parties, the court ruled:

The Court finds that the relevant factors of the frequency of contact
between members of the community, the amount of time known in the
community and the role the person played in the community and the
number of people, that that foundation has not been met and that that
opinion statement with reference to truthfulness and veracity will not come
in.
. . . .

4

The evidence that came in, counsel, does not convince me that the community has been defined and the foundation has not been laid.

RP at 316.

The defense renewed its questioning of S.B., but the trial court remained unconvinced that a foundation had been established, so the cross-examination moved on to other matters. The cross-examination concluded with S.B. indicating that she had trouble believing A.S. RP at 326.

The parties argued the case on competing theories of the respective credibility of A.S. and Mr. Chavez. The jury returned a verdict of guilty. After imposition of a standard range sentence, Mr. Chavez timely appealed to this court.

## ANALYSIS

The sole issue[3] presented is whether the trial court erred in declining to permit S.B. to state the reputation of A.S. in the school community. Although the court could have reached a different result on these facts, we cannot hold that the court abused its discretion.

---

[3] Mr. Chavez also filed a well-written statement of additional grounds raising several issues. In such matters as the length of voir dire and other courtroom management issues, Mr. Chavez has failed to establish any abuse of the trial court's considerable management discretion. *Peluso v. Barton Auto Dealerships, Inc.*, 138 Wn. App. 65, 69, 155 P.3d 978 (2007). In those and all of the other claims, his personal statement fails to establish prejudicial error. Accordingly, there is no basis for relief and we will not further address the arguments.

5

This court reviews the trial court's evidentiary rulings for abuse of discretion. *State v. Guloy*, 104 Wn.2d 412, 429-430, 705 P.2d 1182 (1985). The foundation for admission of ER 608 reputation evidence likewise is reviewed for abuse of discretion. *State v. Land*, 121 Wn.2d 494, 500, 851 P.2d 678 (1993). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

ER 608(b) provides in essence that a party may not attack the credibility of a witness by extrinsic evidence of prior conduct, but the witness may be cross-examined as to her character for truthfulness or untruthfulness. ER 608(a) similarly allows reputation testimony concerning a witness's character trait of truthfulness or untruthfulness. To offer such testimony, the proponent of the reputation testimony generally must satisfy a five factor test. *State v. Lord*, 117 Wn.2d 829, 873, 822 P.2d 177 (1991). The five elements are:

> "The first element is the foundation for the testimony—the knowledge of the reputation of the witness attacked. Second, the impeaching testimony must be limited to the witness's reputation for truth and veracity and may not relate to the witness's general, overall reputation. Third, the questions must be confined to the reputation of the witness in his community . . . Fourth, the reputation at issue must not be remote in time from the time of the trial. Finally, the belief of the witness must be based upon the reputation to which he has testified and not upon his individual opinion."

*Id.* (quoting 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 231, at 202-204 (3d ed. 1989)).

6

In the context of defining "community" for purposes of ER 608, the court discussed that standard two years later in *Land*.

> A party seeking to admit evidence bears the burden of establishing a foundation for that evidence. To establish a valid community, the party seeking to admit the reputation evidence must show that the community is both neutral and general. Some relevant factors might include the frequency of contact between members of the community, the amount of time a person is known in the community, the role a person plays in the community, and the number of people in the community. The decision as to whether the foundation for a valid community has been established rests within the proper discretion of the trial court. A trial court abuses its discretion when it acts in a manner that is manifestly unreasonable or based on untenable grounds or reasons.

121 Wn.2d at 500 (citations omitted). *Land* held that the trial court had not abused its discretion in permitting reputation testimony based on a work community of wood shook manufacturing. *Id.* at 500-501. The court also ruled that reputation evidence was no longer to be limited to the community in which the witness lived. *Id.*

Here, the trial court applied the established *Land* test and concluded Mr. Chavez had not satisfied the foundation for admitting the proposed ER 608(a) testimony. Mr. Chavez argues here that the trial court determined, wrongfully in his view, that a school could not be a community. However, the record does not read as Mr. Chavez argues it does. Trial counsel attempted to bait the court into ruling that a school was not a community, but the trial judge declined to bite on the argument. RP 321-322.

7

As noted previously, the trial court appeared to accept the notion that a school could constitute a community.[4] RP 316. Rather, the court found that the *Land* factors had not been satisfied:

> The Court finds that the relevant factors of the frequency of contact between members of the community, the amount of time known in the community and the role the person played in the community and the number of people, that that foundation has not been met.

RP at 316.

This was a tenable basis for ruling. Mr. Chavez sought to impeach A.S. with her alleged reputation at her former school, one that she had only attended for a portion of her eighth grade year. The witness was not even a classmate, but a student who had trailed her through the years at various schools. It appears that the children to whom S.B. had talked were her classmates rather than A.S.'s, although the record is less than clear on that point. There was no discussion about how well those children knew A.S. nor how long they had known her or her purported reputation. It also is very unclear that they were reporting an actual reputation as opposed to their personal opinions about A.S. It was also unclear whether the reputation was recent rather than one developed years

---

[4] Although we need not decide the issue, it appears that a school could be a proper "community" within the meaning of ER 608 in many instances. We note the prosecutor's policy arguments concerning the development of children as reasons for not applying ER 608 to youth and believe they may be important considerations for a trial judge to weigh in determining whether or not to allow this type of evidence. We likewise need not further address these arguments in light of our conclusion.

8

previously in her grade school days.[5]  In short, S.B. did not provide sufficient information to establish the foundation recognized in *Land*.

The brief time that A.S. was at Weston school and the ambiguous nature of the information provided by S.B. concerning the girls she had spoken to could legitimately leave the trial judge dissatisfied with the defense proffer.  This is a tenable basis for rejecting the testimony.  The court did not err.

The conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

I CONCUR:

_____
Fearing, C.J.

---

[5] In response to a question from the court, S.B. stated that she did not think the reputation evidence related to a time before A.S. was at Weston.  RP at 301.

No. 34334-1-III

SIDDOWAY, J. (dissenting) — In prosecutions for rape where the defense is consent, the central issue is who is telling the truth. Under Washington's evidence rules, the only direct way an accuser's character for truthfulness can be challenged is through evidence that she or he has a reputation as untruthful, offered under ER 608. In this case, after defense counsel laid the foundation for inquiry into the accuser's reputation and relevant portions of the State's voir dire further supported it, the trial court nevertheless sustained the State's objection without specifying what it found lacking. Because the State's arguments that apparently persuaded the court went to the weight of the evidence, not its admissibility, I can find no tenable basis for the court's ruling. I would reverse and remand for a new trial.

I suspect the trial court was dubious about the value of reputation evidence, and understandably so. Unfortunately, Washington is in the small minority of jurisdictions that excludes informed opinion evidence about a witness's truthfulness, preferring evidence of the witness's reputation. As the Washington Supreme Court pointed out almost a century ago in *State v. Hooker*, no less an authority than John Henry Wigmore

contended that the opinion of a witness's truthfulness from someone well acquainted with that witness was far superior to evidence of "'the second-hand, irresponsible product of multiplied guesses and gossip which we term "reputation."'" 99 Wash. 661, 668, 170 P. 374 (1918) (quoting 3 JOHN HENRY WIGMORE, A TREATISE ON THE SYSTEM OF EVIDENCE IN TRIALS AT COMMON LAW § 1986, at 2644 (1904)). Because many commentators agreed that preferring reputation testimony over opinion was historically unsound, the federal rules of evidence have provided since enactment in 1976 for the admissibility of evidence of truthfulness in the form of opinion as well as reputation. *United States v. Lollar*, 606 F.2d 587 (5th Cir. 1979). At the time *Hooker* was decided, Washington was only one of six states that took "the radical position, devoid of historical support, that reputation is the sole source of proof." *Hooker*, 99 Wash. at 668. In adopting Washington's evidence rules in 1979, our Supreme Court persisted in that position, rejecting the modern option provided by the federal rules and the rules of most states. *See* 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 608.1, at 426 & n.6 (6th ed. 2016); EDWARD J. IMWINKELRIED, EVIDENTIARY FOUNDATIONS § 5.06[1], at 221 (9th ed. 2015) ("The majority view . . . is that opinion evidence is also admissible."); *People v. Barber*, 74 N.Y.2d 653, 655-58, 541 N.E.2d 394, 394-97, 543 N.Y.S.2d 365 (1989) (Titone, J. dissenting) (collecting rule

and case citations reflecting the modern, majority approach).[1]

A reputation witness in Washington cannot support her knowledge of another

witness's reputation as untruthful with examples; all she can provide in direct

examination is what the United States Supreme Court described in a decision predating

the adoption of the federal rules of evidence as a "summar[y of] what [s]he has heard in

the community":

> When the defendant elects to initiate a character inquiry, [an]
> anomalous rule comes into play. Not only is he permitted to call witnesses
> to testify from hearsay, but indeed such a witness is not allowed to base his
> testimony on anything but hearsay. What commonly is called "character
> evidence" is only such when "character" is employed as a synonym for

---

[1] In addition to the 29 states that Justice Titone identified in 1989 as permitting opinion testimony as an alternative to reputation evidence, *see Hathcock v. Wood*, 815 So. 2d 502, 508 (Ala. 2001); *Baumann v. State*, 891 A.2d 146, 148 (Del. 2005) (citing DEL. R. EVID. 608); *Douglas v. State*, 796 S.E.2d 893, 896 (Ga. Ct. App. 2017) (applying GA. CODE ANN. § 24-6-608 (effective January 1, 2013)); *People v. Burgund*, 66 N.E.3d 553, 594-95 (Ill. App. Ct. 2016) (applying ILL. R. EVID. 608 (effective Jan. 1, 2011)); *Jacobs v. State*, 22 N.E.3d 1286, 1289 (Ind. 2015) (applying IND. R. EVID. 608); *Perry v. Kentucky*, 390 S.W.3d 122, 137 n.5 (Ky. 2012) (applying KY. R. EVID. 608); *People v. Lukity*, 596 N.W.2d 607, 610-11 (Mich. 1999) (applying MICH. R. EVID. 608); *Cooper v. State*, 628 So. 2d 1371, 1373-74 (Miss. 1993) (citing MISS. R. EVID. 608); *State v. Baymon*, 446 S.E.2d 1, 4-5 (N.C. 1994) (citing N.C. GEN. STAT. § 8C-1, Rule 608(a) (1992)); *State v. McKerley*, 725 S.E.2d 139, 141-42 (S.C. Ct. App. 2012) (applying S.C. R. EVID. 608); *State v. Dutton*, 896 S.W.2d 114, 117-18 (Tenn. 1995) (applying TENN. R. EVID. 608).

Only nine states, Washington included, still permit only reputation evidence. *See, e.g., Ibar v. State*, 938 So. 2d 451, 468 (Fla. 2006); *Hasney v. Allstate Ins. Co.*, 781 So. 2d 598, 603 (La. Ct. App. 2001); *State v. Kalex*, 789 A.2d 1286, 1290 (Me. 2002); *Commonwealth v. Walker*, 60 Mass. App. Ct. 255, 801 N.E.2d 267, 277-78, *aff'd in part, rev'd in part*, 442 Mass. 185, 812 N.E.2d 262 (2004); *State v. Bennish*, 479 S.W.3d 678, 682-63 (Mo. Ct. App. 2015); *People v. Taylor*, 556 N.Y.S.2d 307, 308 (N.Y. App. Div. 1990); *Commonwealth v. Minich*, 4 A.3d 1063, 1068-69 (Pa. Super. Ct. 2010); *Smith v. Virginia*, 187 S.E.2d 191, 192 (Va. 1972).

"reputation." The witness may not testify about defendant's specific acts or courses of conduct or his possession of a particular disposition or of benign mental and moral traits; nor can he testify that his own acquaintance, observation, and knowledge of defendant leads to his own independent opinion that defendant possesses a good general or specific character, inconsistent with commission of acts charged. The witness is, however, allowed to summarize what he has heard in the community, although much of it may have been said by persons less qualified to judge than himself. The evidence which the law permits is not as to the personality of defendant but only as to the shadow his daily life has cast in his neighborhood.

*Michelson v. United States*, 335 U.S. 469, 477, 69 S. Ct. 213, 93 L. Ed. 168 (1948) (footnote omitted).[2]

The Supreme Court described reputation as "compact[ing] into the brief phrase of a verdict the teaching of many incidents and the conduct of years," observing that the "task of compacting reputation hearsay into the 'brief phrase of a verdict' is one of the few instances in which conclusions are accepted from a witness on a subject in which he is not an expert. However, the witness must qualify to give an opinion by showing such acquaintance with the defendant, the community in which he has lived and the circles in which he has moved, as to speak with authority of the terms in which generally he is regarded." *Id.* at 477-78.

Because our evidence rules explicitly permit reputation testimony and prevent an accuser's untruthful character from being demonstrated in any other direct way, the

_____

[2] The modern rule-based exception for hearsay as to reputation is Rule 803(21), in both the federal and Washington State evidence rules.

4

evidence should be admitted despite its inherent shortcomings once the foundation is laid. As Mr. Chavez points out, "the **only issue at trial** in this case was the relative credibility of the accuser and the accused" and for that reason, the trial court "should have erred on the side of admitting testimony that was critical." Reply Br. at 1-2, 5. As Justice Utter observed in *State v. Hudlow*, Sixth Amendment rights "are especially crucial in a rape case where, more often than in other cases, the testimony of the victim is critical in establishing guilt or innocence." 99 Wn.2d 1, 24, 659 P.2d 514 (1983) (Utter, J., dissenting). Professor Imwinkelried has agreed, observing that "especially in sex offense cases, there is a crying need for credibility evidence; there are rarely eyewitnesses, and the trial frequently becomes a swearing contest." IMWINKELRIED, *supra*, § 5.04[1], at 217.

In the trial below, the defense planned to elicit evidence of the reputation of the accuser, A.S., from S.B., A.S.'s friend. Defense counsel even told jurors in opening statement that they would hear from S.B., who had known A.S. since the second grade and "knows [her] reputation . . . for truth and honesty," before he was cut off by an objection and the trial court's ruling that mention of S.B.'s expected reputation testimony must be deferred to closing argument. Report of Proceedings (RP) at 128-32.

S.B. was offered as a witness in the State's case in chief, since she was one of the first persons in whom A.S. confided that she thought she might have been raped by Mr. Chavez. It was in cross-examining S.B. that defense counsel laid the foundation for

5

reputation evidence. He established that S.B. had a hard time believing A.S., related to her own experience with A.S. He established S.B.'s long acquaintance with A.S. and their many years in public school together.[3] He established the size of the school community and then asked whether S.B. was aware of A.S.'s reputation in the school community. While brief, the foundation was textbook. *Compare* RP at 298-99, *with* TEGLAND, *supra*, §608.4, at 432-33, *and* IMWINKELRIED, *supra*, § 5.06[1], at 221.

The State objected when defense counsel reached the point of asking S.B., "were you aware of her reputation in the school community. . . ." RP at 299. Before S.B. could answer, the court excused the jury at the State's request. Outside the presence of the jury, the court had defense counsel offer the remainder of his intended questioning on the subject, which he did:

> Q  So, Miss [B.], you have been acquainted with in the school setting—in the school community you have been acquainted with probably at least hundreds of people that have been acquainted with you and [A.S.]; haven't you?
> A  Yes.
> Q  Okay. And are you aware of her reputation in that school community for truthfulness or untruthfulness?
> A  Yes.
> Q  And what is that reputation?
> A  She wasn't doing very good.

---

[3] S.B. clearly would have been competent to offer an opinion on A.S.'s truthfulness in a court that followed the majority approach; the required foundation is that the opinion witness knows the relevant witness well enough to have formed an opinion. *E.g.*, *United States v. Turning Bear*, 357 F.3d 730, 734 (8th Cir. 2004). But Mr. Chavez did not try to offer S.B.'s opinion below or argue that the exclusion of opinion testimony under Washington evidence rules violated his constitutional right to present a defense.

Q Wasn't doing very good with the truth?
A Yeah.
. . . .
Q Okay. When is the most recent that you have heard about the reputation for truthfulness?
A I don't know for sure.
Q Well, for example, have you heard about that truthfulness since you went to school in Weston with her?
A Yeah.
Q Okay. And that was just last year; wasn't it?
A Yes.

RP at 300-01.

The court then invited the State to conduct voir dire. Two matters explored by the State in voir dire were unrelated to the foundation for reputation testimony and therefore outside the proper scope of voir dire.[4] The State got S.B. to agree that A.S.'s reputation could have been based on false rumors. Of course it could—any reputation can be, as Wigmore observed. The inherent problems with reputation evidence are a proper and typical subject matter of cross-examination when reputation testimony is offered, but whether a reputation is based on solid information or whether the witness even knows the source of the reputation goes at most to the weight of the evidence, not its admissibility. *Cf. State v. Land*, 121 Wn.2d 494, 499, 851 P.2d 678 (1993) (while acknowledging

---

[4] The right to conduct voir dire is limited to questioning in support of the objection and its scope is confined to the existence of the disputed foundational facts. It exceeds that scope if it includes questioning on foundational facts not raised by the objection, the witness's credibility, or the witness's testimony on the historical merits. *See* Edward J. Imwinkelried, *Determining Preliminary Facts under Federal Rule 104*, 45 AM. JUR. TRIALS 1, § 29, at 61; § 34, at 68 (1992).

7

"some validity" to possible bias in the community relied on, "the remedy is simple: the motivation and bias of a reputation witness is always subject to cross examination").

The State also asked for specifics S.B. might be able to provide on the source of her knowledge of A.S.'s reputation: how many people she'd heard it from, who, and specifically what was said—again, an issue relevant to weight but not a part of the foundation. In a legal community, for instance, one may be able to honestly and fairly say she or he is familiar with a lawyer's or a judge's reputation for diligence and preparation (or the opposite) without being able to recall from whom, or from how many people, she or he heard that view expressed. Many people with a bona fide awareness of another individual's reputation would be unable to remember and name five people who spoke to them about that individual's character. "[A]ny lack of knowledge of the reputation assailed [that is] shown upon cross-examination [goes] to the credibility or weight of the impeaching testimony rather than to its competency." *Hooker*, 99 Wash. at 673. A reputation witness's lack of recall can be explored on cross-examination and may, or may not, cause jurors to discount the evidence.[5]

---

[5] A third irrelevant matter argued by the State was not a subject matter of its voir dire: it argued that Mr. Chavez could not offer the evidence because A.S., who had earlier testified, had not been subjected to "slashing cross-examination" by defense counsel. *See, e.g.*, RP at 131, 307. The prosecutor evidently was thinking of evidence of a witness's truthful character, which can be offered only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise. No such requirement applies where evidence of an untruthful character is offered. *See* ER 608(a).

Of the relevant matters explored by the State in voir dire, none undermined defense counsel's foundation. Asked whether she was aware of A.S.'s reputation before or after the alleged rape, S.B. said she thought it was before. Asked whether before "last April"[6] A.S. had a reputation in her school community for truthfulness, S.B. answered, "She did." RP at 304. Asked what it was, she answered, "She just lied to teachers and, like, she got kicked out of class and stuff." *Id.* S.B. agreed that she had previously told the prosecutor that some of the things A.S. lied about were whether she had permission to be at S.B.'s house, turning in assignments when she hadn't, whether she had to stay after school to finish homework, and hanging out with people she wasn't supposed to. S.B. testified that at Weston Middle School, the school the girls attended when the alleged rape occurred, there were approximately 200 students in the class. Asked how she knew what A.S.'s reputation was, S.B. answered:

> A Because I have heard it from people *and she told me.*
> Q *[A.S.] told you herself that people think she is a liar?*
> A *Uh-huh.*

RP at 306 (emphasis added). A.S.'s admission to S.B. that she had a reputation as a liar makes the trial court's exclusion of the evidence particularly puzzling.

At most, the State established that S.B. and A.S. had had different classmates at the different schools they had attended in Milton-Freewater beginning in the second

---

[6] The alleged rape took place during the night or early morning of April 17-18, 2015.

9

grade. In further questioning, defense counsel established that prior to the alleged rape, the girls had been attending Weston Middle School together since fall 2014. While focusing on A.S.'s reputation "at Weston" before the alleged rape narrowed the time frame to eight or nine months, it also placed S.B.'s knowledge of A.S.'s pre-April 2015 reputation for truthfulness as close in time as possible to the trial, which is a required element of the foundation for reputation testimony. RP at 306-11; *see State v. Lord*, 117 Wn.2d 829, 873, 822 P.2d 177 (1991).

The key foundational question for the trial court was whether a school community is a valid community for purposes of offering reputation testimony. Commentators writing on the reputation evidence issue have offered school as a paradigm of a neutral and general community in which a witness may acquire an admissible reputation for truthfulness. IMWINKELRIED, *supra*, § 5.06[2], at 221 ("For instance, a church congregation or the student body of a school can constitute a community."); Fred Warren Bennett, *Is the Witness Believable? A New Look at Truth and Veracity Character Evidence and Bad Acts Relevant to Truthfulness in a Criminal Case*, 9 ST. THOMAS L. REV. 569, 582 & n.108 (1997) ("The witness may testify to the defendant's reputation among colleagues and associates at work, church, school or other organizational settings." (citing CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, EVIDENCE §

10

4.19, at 249 (1995))[7]). *And see Land*, 121 Wn.2d at 496 (in child molestation case, both sides called reputation witnesses to impeach the reputation for veracity of the other side's witnesses; the defendant's reputation witness testified to the accuser's reputation within his school community). On one of the factors relevant to whether a community is neutral and general—the frequency of contact between members of a community—judicial notice can be taken of the fact that Washington schools conduct a school year of not less than 180 school days and not less than 1,000 instructional hours. RCW 28A.150.220; WAC 180-16-200.

Although the State argues on appeal that S.B. and A.S. were a year apart in school, that did not prevent the two girls' longstanding association nor was any evidence developed that the age difference prevented them from being members of a common school community. At trial, A.S. identified two girls other than S.B., who were also younger than her and a grade behind her in school, as among her few good friends. *See* RP at 155, 200, 262, 264 (friendship with and ages of M.B. and A.B.). It was undisputed that S.B. and A.S. had been friends for many years despite their one-year grade difference. A.S. testified that during most of her years in school, S.B. had been at the

---

[7] Mueller & Kirkpatrick write in a later edition of their treatise that "as our society has become more mobile and impersonal, courts focus less on neighborhood acquaintance and allow character witnesses to testify to a person's reputation among colleagues or associates in the workplace, school, church, and other organizational settings." CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, EVIDENCE: PRACTICE UNDER THE RULES, § 4.19, at 306 & n.6 (2d ed. 1999) (citing *United States v. Oliver*, 492 F.2d 943, 948 (8th Cir. 1974) (college roommate may testify)).

11

same school and they shared some of the same friends. There is no evidentiary basis in the record for attaching significance to the grade difference. The State can only speculate that it disqualifies S.B. from testifying to A.S.'s reputation.

Without identifying what part of the foundation it found lacking, the trial court sustained the State's objection by reciting the elements of the foundation and stating, "[T]hat foundation has not been met." RP at 316. When defense counsel later pressed the court, asking "[W]hat aspect of the foundation is the Court indicating has not been met?" the trial court answered, "I have made my record on that, counsel. You can move on." RP at 322.

Where the foundation for reputation evidence is established, admitting evidence in a rape case of an accuser's reputation as untruthful should rarely be viewed as substantially more unfairly prejudicial than probative under ER 403.[8] Reputation evidence is seldom compelling. Jurors know, and can be reminded through cross-examination or closing argument, that a reputation can be unreliable or even entirely unfounded. If evidence that an accuser's reputation as untruthful is offered by a witness aligned with the accused (which, if the evidence is false, it probably will be) jurors are likely to discount it, perhaps entirely. Since it opens the door to evidence of the accuser's truthful character, it can be neutralized if false by calling a reputation witness who will disagree. And it can backfire badly if the accused's reputation witness is not credible and

---

[8] ER 403 was not a basis for the State's objection in the trial court but is argued on appeal as a basis for affirming.

the State now has what would have been the otherwise-unavailable opportunity to bolster the credibility of the accuser.

Here, however, the evidence had the potential of being persuasive. It was undisputed that A.S.'s and S.B.'s families were close and, as A.S. herself testified, she and S.B. "grew up together." RP at 174. S.B. was a close enough friend that A.S. went to S.B.'s home the day after the alleged rape, and after A.S.'s fight with her grandmother caused her to run away from home for the second time in two days. While family members and friends called as witnesses in the State's case provided evidence that supported the prosecution, the record does not suggest that any was likely to testify credibly that A.S. had a reputation as a truthful person.[9]

The exclusion of a criminal defendant's evidence challenging the credibility of a principal state witness is reviewed under the constitutional harmless error standard. *See, e.g., United States v. Davis*, 639 F.2d 239, 244-45 (5th Cir. 1981) (trial court exceeded its discretion in excluding evidence challenging the credibility of a witness, Wooten, where "[s]uch testimony would certainly be essential to a jury's decision whether to believe Wooten's testimony, without which the government would have no case"). The State had

---

[9] The prosecutor was very protective of A.S., who evidence established had a troubled home life and difficulties at school. And the State argues on appeal that a reputation for untruthfulness arising from lying to teachers about assignments does not mean that A.S. would lie about being raped. That is a legitimate argument to make to a jury. It is not a basis for excluding the evidence.

other evidence that A.S. had not consented to sex with Mr. Chavez, the strongest likely being Mr. Chavez's initial denial that the two had engaged in sex at all. But one cannot say that the error in excluding evidence that A.S. had a reputation as untruthful was harmless beyond a reasonable doubt.

Two additional things trouble me about exclusion of the evidence. First, the court might have accepted the State's misguided position that rape victims should be protected from having their reputation for truthfulness attacked even when a foundation for the evidence can be laid. The State argues on appeal, "[I]t is harmful to the child rape victim to brand her as having a character or reputation for deceit." Resp't's Br. at 17. The legal system can and properly does provide support to victims and can protect a person alleging rape from aspects of the legal process that might otherwise cause her or him unnecessary trauma or other difficulty. But it cannot protect a victim from the right of a defendant to present relevant evidence in support of a defense. It appears to me that the State views the rape shield statute as analogous to excluding evidence of an accuser's reputation as untruthful, and it is not. The rape shield statute ordinarily excludes evidence of an accuser's past sexual behavior only when it is irrelevant, which it usually is. "[W]ithout more," evidence of a woman's consent to sexual activity in the past "does not even meet the bare relevancy test of ER 401." *Hudlow*, 99 Wn.2d at 10. Even the ER 403 balancing required when evidence of the accuser's prior sexual behavior meets a minimal test of relevance focuses "not on potential prejudice and embarrassment to the

14

complaining witness[ ], but instead should look to potential prejudice to the truthfinding process itself." *Id.* at 13. A challenge to an accuser's credibility, by contrast, is unquestionably relevant.

Also troubling is the fact that by excluding the evidence, the jury was left with a false impression of why S.B. didn't know whether to believe A.S. During S.B.'s direct examination by the State, she was asked what had happened when A.S. came over following her fight with her grandmother, and S.B. answered, in part, "I asked her what happened and she just told me that she got raped. *And I didn't know to believe her or not because I didn't know if it was true or not.*" RP at 292 (emphasis added). The State followed up immediately with leading questions offering a possible, prosecution-friendly explanation for S.B.'s doubts:

Q Okay. A fair comment because you didn't see what happened; right?
A Right.
Q And you weren't with her and her friends the night before; were you?
A No.

*Id.* Yet in the questioning that took place outside the presence of the jury, it was clear that the principal reason S.B. had doubts was because she thought—and here I use S.B.'s own words—that A.S. is "a liar." *See* RP at 311-12.

Given the trial court's ruling, Mr. Chavez was unable to cross-examine S.B. about her disbelief in terms that would reveal the true reason for her doubts. Ultimately, with

15

the jury present, he could only ask, "Without going into the reasons why, you had some

trouble believing [A.S.]; didn't you?" to which she answered, "Yes." RP at 326.

For these reasons, I dissent.

_____
Siddoway, J.

16