[No. 30651.  Department Two.  February 24, 1949.]

THE STATE OF WASHINGTON, *Respondent,* v. PHILLIP TERNAN
*et al., Appellants.*[1]

[1]Reported in 203 P. (2d) 342.

*Warner, Pierce & Peden* and *H. Orley Solomon,* for appellants.

*Charles O. Carroll* and *F. A. Walterskirchen,* for respondent.

GRADY, J.—The appellants were found guilty by a jury of the crime of assault in the second degree and, from the judgment entered on the verdict, have taken this appeal.

The appellants present four questions for our consideration: (a) that the information was not sufficient to charge assault in the second degree; (b) that certain instructions given by the court were erroneous; (c) that the court should have given a certain instruction proposed by appellants; (d) that it was error to receive testimony of witnesses in rebuttal as to the general reputation of the appellants for truth and veracity.

(a) The charging part of the information upon which the appellants were tried is as follows:

. "They, the said Phillip Ternan and William Ternan, and each of them, in the County of King, State of Washington, on or about the 30th day of January, 1948, wilfully and unlawfully did make an assault upon the person of one Elmon Ousley, and did then and there inflict grievous bodily harm upon the said Elmon Ousley."

The crime of assault in the second degree is defined by Rem. Rev. Stat., § 2414 [P.P.C. § 113-39], so far as applicable to this case, as follows:

"Every person who, under circumstances not amounting to assault in the first degree—  . . .

"(3) Shall willfully inflict grievous bodily harm upon another with or without a weapon;  . . .

"Shall be guilty of assault in the second degree.  . . ."

Rem. Rev. Stat., § 2065 [P.P.C. § 132-29], provides:

"The indictment or information is sufficient if it can be understood therefrom,—  . . .

"7. [That] the act or omission charged as the crime is stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction, according to the right of the case."

██ We have decided that, in informations for offenses created by statute, it is in general sufficient to describe the crime substantially in the language of the statute; and we have also decided that an information will be considered sufficient when the facts constituting a crime are so stated in the information that a man of common understanding can determine therefrom the offense with which he is charged. *State v. Wray,* 142 Wash. 530, 253 Pac. 801; *State v. Vaughan,* 163 Wash. 681, 1 P. (2d) 888; *State v. Dodd,* 193 Wash. 26, 74 P. (2d) 497. The latter rule is known as the "common understanding" rule and finds its latest expression in *State v. Unosawa,* 29 Wn. (2d) 578, 188 P. (2d) 104, in which we said:

"It could be contended that, in this case, we should adopt the 'common understanding' rule. That rule is to the effect that an information will be considered sufficient, if a person of common understanding can, from the allegations of the information, know the exact nature of the charge against him. We have no quarrel with that rule, *provided the information itself charges a crime.* If the information does not charge a crime, then there is no charge upon which the defendant can be tried or convicted.

"Before applying the common understanding rule, we must first determine whether or not the information charges all of the statutory elements of the particular crime involved. Upon being satisfied as to this fact, we can then, and not until then, look to the information as a whole and determine whether a man of common understanding can know the exact nature of the charges against him. To state the proposition in another way, the common understanding rule cannot be applied in any case, unless and until it is first determined that the information itself does charge a crime."

██ When we apply the foregoing tests to the information before us, we readily reach the conclusion that the necessary statutory elements of the crime of assault in the second degree were charged. The information would have been more in the exact words of the statute if the word

"willfully" had immediately preceded the word "inflict," but it is not necessary that the precise words of the statute be used. The charging part of the information is all in one sentence and means that both the assault and the infliction of grievous bodily harm were willfully done. We think a man of common understanding, when he read the information, would know the exact nature of the charge against him and that such charge was an assault in the second degree.

■ (b) In one of the instructions of which appellants complain, the jurors were informed that, in order to convict the appellants of the crime of assault in the second degree, the state must prove: (1) the making of a willful and unlawful assault; (2) that the defendants did then and there inflict grievous bodily harm upon the person assaulted. The error claimed is that the jury was not told that the infliction of the grievous bodily harm must have been "willfully" done.

If this instruction stood alone, subdivided as it was, and was not supported by other instructions informing the jury as to the element of intent to inflict grievous bodily harm, there would be much merit to the criticism made; but, in other instructions, the jury was told that the law presumed that every man intends the natural and probable consequences of his own acts, and that, if the jurors believed grievous bodily harm had been inflicted, then they would have the right to presume that the appellants intended to inflict grievous bodily harm when they made the assault.

In another instruction setting forth the difference between assault in the second degree and assault in the third degree, the jury was told that, in the case of assault in the second degree, there must have been grievous bodily harm willfully inflicted; also, that the word "willfully" as used in the instructions and the information meant "intentionally" and not "accidently." In defining assault in the second degree, the jurors were told that every person who willfully inflicted grievous bodily harm upon another with or without a weapon was guilty of such offense.

When all of the instructions given by the court on the subject of assault in the second degree are considered, it is clear that the jurors understood that, before the appellants could be convicted of such offense, they must be convinced from the evidence beyond a reasonable doubt that an assault was committed, and that in making the assault the appellants willfully inflicted grievous bodily harm.

The appellants complain of the instruction given by the court defining a battery, their argument being that battery was not an issue in the case. The evidence submitted made it the duty of the court to instruct the jury upon the lesser offense of assault in the third degree, and in so doing it was necessary to define the elements of that offense. The instructions, instead of being prejudicial to the appellants, were beneficial to them, because the jury was given an opportunity to convict them of a lesser offense than the one charged in the information.

The other objections made to the instructions on the subject of assault in the second degree are to the effect that the jurors should have been informed that even though an assault was made by the appellants, if such assault either did not result in the infliction of grievous bodily harm, or that if grievous bodily harm was inflicted, but such was not willfully done, then the defendants could be convicted of no greater offense than assault in the third degree. The court did not embody both of these alternatives in any one instruction, but, as we have heretofore indicated, the instructions gave the jury to understand that the element of willfulness in connection with the infliction of grievous bodily harm must exist in the case of an assault in the second degree, but such element was not necessary in the case of assault in the third degree. It may be that it would have been better if the court had been more explicit with reference to the difference between the two offenses so far as the element of willfulness was concerned, but we cannot say the jury was misled to the prejudice of appellants.

Appellants also urge that it was error to give the instruction above referred to upon the presumption in

which the jury would have the right to indulge under the circumstances stated therein. The instruction was proper in this case, because the element of intent was involved, and it cured any defect which might have existed in the instruction setting forth the elements of the offense charged and of which complaint is made.

■ (c) The appellants assign as error the refusal of the court to give the following instruction:

"You are instructed that matters of fact, if any, which are left uncertain by the evidence cannot be made certain to the prejudice of any defendant by inference. In the absence of evidence, no inference can be drawn by the jury against the defendant, but on the contrary, all the inferences and presumptions consistent with the facts proved are to be drawn and indulged in favor of the innocence of each defendant. No fact or circumstance upon which you may base a conclusion of guilt is sufficient unless such fact or circumstance has been proved beyond a reasonable doubt and to the same extent as if the whole conclusion depended upon that one fact or circumstance."

If we understand the argument of counsel for appellants correctly, the instruction was proposed so as to caution the jury against drawing an inference that the appellants willfully inflicted grievous bodily harm upon the prosecuting witness when they were not so charged by the information. It is true that a trier of fact cannot draw an inference unless there is a factual basis therefor, but our examination of the record convinces us that there was evidence of acts and conduct in connection with the assault and with reference to its nature and character sufficient to afford a basis for drawing the inference that the infliction of grievous bodily harm was willful and intentional. No error was committed by the court in its refusal to give the proposed instruction.

■ (d) The remaining assignment of error arises out of the following situation: The appellants were called as witnesses in their own behalf and gave testimony. In rebuttal, the respondent called witnesses who were asked over the objection of appellants if they knew the general reputation of appellants for truth and veracity in a certain named area or community. The witnesses answered in the

affirmative and, in response to further questions, stated that such reputation was bad.

The court gave the jury the following instruction:

"Evidence relative to the reputation of the defendants for truth and veracity was admitted solely for the purpose of affecting their credibility as a witness, and is to be considered by you for that purpose only, and in connection with all the other evidence in the case, in deciding how much weight or credence you will give their testimony."

Error is assigned in the giving of this instruction, but clearly it was beneficial to the appellants rather than prejudicial, as it limited the jury to a consideration of the only purpose for which such testimony would be relevant, and excluded from the minds of the jurors the idea that they might consider such evidence in determining whether the appellants were guilty of any offense.

The appellants in their argument and their discussion of the cases cited in support thereof, have not drawn the very important distinction existing between the character of a person and his reputation made in *State v. Refsnes,* 14 Wn. (2d) 569, 128 P. (2d) 773. We agree with the appellants that the *character* of a defendant in a criminal case is not open to inquiry unless he himself puts it in issue; but when a defendant in a criminal case takes the witness stand, he subjects himself to cross-examination the same as any other witness, and the state has the right to impeach him as a witness to the extent of proving by witnesses that his general reputation for truth and veracity in the community where he resides is bad.

Our statute, Rem. Rev. Stat., § 2148 [P.P.C. § 127-1], provides that an accused person may offer himself as a witness in his own behalf and shall be allowed to testify as other witnesses in such case, but, when he shall so testify, he shall be subject to all the rules of law relating to cross-examination of other witnesses. This statute has been construed to mean that such witness may be impeached with reference to his general reputation for truth and veracity in the community where he resides. *State v. Hooker,* 99 Wash. 661, 170 Pac. 374; *State v. Friedlander,* 141 Wash. 1, 250 Pac. 453.

The appellants criticize the *Friedlander* case and ask us to overrule it, their argument being that it is contrary to the provisions of Rem. Rev. Stat., § 2148. If we understand the appellants correctly, their contention is to the effect that it is proper to impeach a defendant who takes the witness stand in his own behalf with reference to his credibility as a witness if that can be accomplished by proper cross-examination, but he cannot be impeached by witnesses in rebuttal testifying as to his bad reputation for truth and veracity until he puts such reputation in issue.

In view of such criticism and request, we have made an investigation of the origin and history of the doctrine of the *Friedlander* case and find the greater part of any confusion or disagreement among the courts that may exist arises out of evidence adduced with reference to traits of character of an accused when he had not put them in issue, rather than impeachment of an accused as a witness with reference to his general reputation for truth and veracity in the community where he resides. The great preponderance of judicial thought is in accord with that case, and we do not think it should be overruled.

The judgment is affirmed.

JEFFERS, C. J., ROBINSON, SIMPSON, and SCHWELLENBACH, JJ., concur.