[No. 59259-4.   En Banc.   May 20, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. LARRY A. LAND, *Appellant*.

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*David S. McEachran, Prosecuting Attorney,* and *Daniel L. Gibson, Deputy,* for respondent.

DURHAM, J. — Appellant Larry A. Land appeals his conviction of one count of second degree rape of a child and one count of second degree child molestation. Land claims that the trial court erred in permitting rebuttal testimony by state witnesses concerning his poor reputation for veracity in the business community, and in refusing to allow the jury to view the scene of the crime. We affirm the conviction.

Larry Land was charged by information with one count of second degree rape of a child in violation of RCW 9A.44.076 and one count of second degree child molestation in violation of RCW 9A.44.086. The counts were based on his contact with T.T., a 13-year-old boy, on April 26 and 27, 1990. These contacts occurred on Land's sailboat which Land used as a residence. Land admitted that the boy visited him on several occasions, but denied any sexual contact.

The case turned largely on the relative credibility of T.T. and Land. Both sides called witnesses in an effort to impeach the reputation for veracity of the other side's witness. One of T.T.'s former schoolteachers, Peter Rasmussen, was called by the defense to question T.T.'s reputation for truthfulness within the school community. Jim Minshull and Gene Anderson, two former business acquaintances of Land, were called by the State on rebuttal to testify with respect to Land's bad reputation for truthfulness within the wooden box ("wood shook") manufacturing community. The defense objected to the evidence from Land's business acquaintances, claiming that under ER 608, evidence of one's reputation for truthfulness must be based on the community where a person lives, not where that person works. The trial

court overruled the defense objection and permitted the testimony.

The trial court also denied a defense motion to permit the jury to visit the boat where the events took place. The court ruled that the pictures, diagrams and testimony illustrating the layout of the boat were sufficient. The jury found Land guilty on both counts. We accepted certification from the Court of Appeals.

## REPUTATION EVIDENCE

Land contends that the trial court erred in permitting the State to present rebuttal testimony by two of Land's former business colleagues with respect to Land's reputation for veracity under ER 608. This rule of evidence provides that:

> The credibility of a witness may be attacked or supported by evidence in the form of reputation, but subject to the limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise.

ER 608(a). Land relies primarily on *State v. Swenson*, 62 Wn.2d 259, 382 P.2d 614 (1963) for the proposition that testimony concerning a witness' reputation for veracity must be based on the witness' reputation in the community in which he or she resides, not where the witness works.

In *Swenson*, this court concluded that testimony regarding the defendant's reputation for veracity within the church was improper. *Swenson*, 62 Wn.2d at 282. Instead, evidence concerning the defendant's reputation should have been limited to that in the community where she resided. *Swenson*, at 282-83. The *Swenson* court did not explain the reasoning behind this conclusion, stating only that it was required by "the rather strict rules governing character evidence in this jurisdiction." *Swenson*, at 282.

The State argues that we should reject this language from *Swenson* and adopt a more functional definition of "community" parallel to that adopted by the federal courts in inter-

preting Fed. R. Evid. 608.[1] For example, in one federal case, the court held that the realities of our modern world necessitate a functional approach to reputation evidence:

> We also think there should be no restriction necessarily limited to the community in which the witness sought to be impeached lives, and that the realities of our modern, mobile, impersonal society should also recognize that a witness may have a reputation for truth and veracity in the community in which he works and may have impressed on others in that community his character for truthfulness or untruthfulness.

*United States v. Mandel*, 591 F.2d 1347, 1370, *overruled in part on other grounds on rehearing*, 602 F.2d 653 (4th Cir. 1979), *cert. denied*, 445 U.S. 961 (1980). A number of state and federal courts have adopted this functional understanding of "community" for purposes of rule 608. *See, e.g., Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1552 (10th Cir. 1988) (relevant community may include business community); *United States v. Oliver*, 492 F.2d 943, 946 (8th Cir. 1974) (rule "must be applied in a realistic and practical manner"); *State v. McEachern*, 283 N.C. 57, 67, 194 S.E.2d 787 (1973) (reputation may be derived from any community or society in which the person has a well-known or established reputation).

■■ We find the State's argument persuasive. The rule adhered to in *Swenson* was developed at a time prior to the industrial revolution when most people lived and worked in small towns or rural villages. This rule was based on the rationale that it was best to restrict evidence concerning a person's reputation to that group of people who knew the witness best. *See generally* 1 Charles T. McCormick, *Evidence* § 43 (John W. Strong ed., 4th ed. 1992); 5 John H. Wigmore, *Evidence* § 1616 (1974). Given the tremendous changes in demographic patterns since the industrial revolution, however, it is doubtful that limiting reputation evidence to the community where one lives still serves the

---

[1] As pointed out in the Washington commentary, ER 608(a) "differs from the Federal Rule 608 in that it does not authorize the introduction of evidence of character in the form of an opinion." Otherwise, the rules are substantially similar. *Compare* ER 608(a) *with* Fed. R. Evid. 608(a).

purposes behind the rule. People often live and work in separate communities. Mobility between communities has also increased, limiting the depth and duration of one's contacts to a residential community.

In fact, a rule that limits reputation evidence to the community where one lives may undermine the very purposes behind ER 608. This rule of evidence is designed to facilitate testimony from those who know a witness' reputation for truthfulness so that the trier of fact can properly evaluate witness credibility. *See* 5A Karl B. Tegland, Wash. Prac., *Evidence* § 230(1), at 197 (3d ed. 1989). Such a purpose would be thwarted by limiting the prospective pool of character evidence to a neighbor who has only a passing acquaintance with the witness, while excluding testimony from the workplace associates who may know the witness well. As noted by McCormick:

> [Limiting reputation evidence to the community where one resides] would not be appropriate in this country today, where a person may be little known in the suburb or city neighborhood where he lives, but well known in another locality where he spends his workdays or in several localities where he does business from time to time. Thus, today it is generally agreed that proof may be made not only of the reputation of the witness where he lives, but also of his repute, as long as it is "general" and established, in any substantial community of people among whom he is well known, such as the group with whom he works, does business or goes to school.

(Footnotes omitted.) 1 McCormick, *Evidence, supra* at 159.

Land argues, however, that allowing reputation evidence from the business community might be unfairly prejudicial where the community is small and competitive. In such a situation, business associates might have a motive to disparage Land's reputation for truthfulness. Although this argument may have some validity, the same argument could be made regarding the community where one lives. In either case the remedy is simple: the motivation and bias of a reputation witness is always subject to cross examination. In the current case, the defense did uncover potential bias during cross examination and the jury heard this evidence.

■ Land next argues that the prosecution failed to establish the existence of a valid community from which a reputation for veracity might be drawn. He contends that the testimony from his business associates — Jim Minshull and Gene Anderson — was based exclusively on their *personal* opinions of Land's reputation for truthfulness. Under ER 608(a), reputation evidence based solely on personal opinion is disallowed. ER 608 comment.

■ A party seeking to admit evidence bears the burden of establishing a foundation for that evidence. To establish a valid community, the party seeking to admit the reputation evidence must show that the community is both neutral and general. *State v. Lord*, 117 Wn.2d 829, 874, 822 P.2d 177 (1991), *cert. denied*, 121 L. Ed. 2d 112 (1992). Some relevant factors might include the frequency of contact between members of the community, the amount of time a person is known in the community, the role a person plays in the community, and the number of people in the community. The decision as to whether the foundation for a valid community has been established rests within the proper discretion of the trial court. *See Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 76-77, 684 P.2d 692 (1984). A trial court abuses its discretion when it acts in a manner that is manifestly unreasonable or based on untenable grounds or reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

A review of the record indicates that the prosecution established a sufficient foundation for the reputation evidence. Although the wood shook industry is small, foundation evidence elicited during the direct examination of Minshull and Anderson demonstrated that the wood shook industry is a close-knit community. Land had operated as a salesman in this community for several years. In this capacity, he had numerous personal contacts with various members of the industry. From these contacts, his bad reputation for veracity was well known.

In sum, we conclude that the federal approach to ER 608(a) is the better one. Accordingly, we overrule *Swenson* to

the extent that it bars evidence of one's reputation for truthfulness within a business or other relevant community.[2] The wisdom of following a functional approach to problems of community under ER 608 is clearly indicated by the facts of the instant case. Here, Land lived alone on a boat moored at a marina in Bellingham and traveled regularly to British Columbia and California on business. At the time of the trial, he was living in a motel in Bellingham. It is clear that it would be relatively meaningless to attempt to determine Land's reputation for veracity in the community where he resides, whether that community is deemed to consist of boats docked at the marina, or patrons of his motel. The only community where his reputation for truth and veracity could be garnered was the business community in which he operated as a salesman.

### VIEW OF PREMISES BY JURY

Land claims that the trial court erred in not permitting his request to allow the jury to view his boat where the acts of molestation allegedly took place. Here, T.T. testified in some detail about the positions in which he and Land were sitting during the sexual activities. Land's defense was based partly on the theory that, given the layout and size of the boat's interior, the crimes could not have occurred as T.T. described them. He contends that it was not possible for the jury to truly grasp the cramped nature of the boat's interior without actually seeing the boat.

██ Under CrR 6.9, the trial court is given the discretion to allow the jury to view the crime scene. This rule states that "[t]he court *may allow* the jury to view the place in which any material fact occurred." (Italics ours.) The purpose of permitting a jury to view the crime scene is to enable it to better understand the evidence produced in court. *State v. Stoudamire*, 30 Wn. App. 41, 46, 631 P.2d 1028, *review denied*, 96 Wn.2d 1011 (1981); *State v. Davis*, 12 Wn. App.

---

[2]The dissent argues that *Swenson* should be adhered to because it is cited in the commentary to ER 608. However, the comment to ER 608 has never been adopted by this court.

288, 290, 529 P.2d 1157 (1974). A trial court's refusal to permit a jury view is reviewed under an abuse of discretion standard. *State v. Holden*, 75 Wn.2d 413, 414, 451 P.2d 666 (1969).

We find that the trial court acted well within its discretion in denying the defense request for a jury view of the crime scene. Both sides presented extensive testimony regarding the layout and dimensions of the boat's interior. Much of this testimony was supplemented with diagrams of the boat's interior layout. Twelve photographs of the boat were admitted into evidence. These photographs, combined with the testimony and diagrams, amply demonstrated the confined nature of the boat's interior.

In summary, we hold that evidence of Land's reputation in the business community was properly admitted and that his request for a jury view of the crime scene was properly denied. Land's convictions for second degree rape of a child and child molestation are hereby affirmed.

ANDERSEN, C.J., and BRACHTENBACH, DOLLIVER, and GUY, JJ., concur.

JOHNSON, J. (dissenting) — This court has previously adopted an interpretation of ER 608(a), which has been incorporated into the comment to ER 608(a). If this court wants to change the "interpretation" of ER 608(a), it should be done under rule-making authority. The court's recasting of this rule will result in more confusion in the trial courts and more appeals.

This court has clearly defined the scope of "community" under ER 608(a) in *State v. Swenson*, 62 Wn.2d 259, 382 P.2d 614 (1963). *See also State v. Ternan*, 32 Wn.2d 584, 591, 203 P.2d 342 (1949); *State v. Riggs*, 32 Wn.2d 281, 284, 201 P.2d 219 (1949) (citing additional cases for support). In *Swenson*, the court refused to allow evidence concerning a witness' reputation for truth and veracity among people of

her church. When doing so, this court was quite unequivocal in stating that to allow such evidence would have

> constituted a breach of the rather strict rules governing character evidence in this jurisdiction. The evidence should have been limited to proof of appellant's general reputation for truth and veracity in the *community in which she resided.*

(Italics mine.) *Swenson*, 62 Wn.2d at 282-83. *Swenson* subsequently became a cornerstone of ER 608(a) as noted in the comment to that rule:

> The rule restricts the use of character evidence for impeachment to evidence of the witness' reputation for truthfulness, in accordance with existing Washington law. See *State v. Swenson*, 62 Wn.2d 259, 382 P.2d 614 (1963).

ER 608(a) comment. Thus, *Swenson* and prior cases have established that reputation evidence is limited to the community where the witness resides. Now, the majority overrules *Swenson* by allowing "community" to also include "a business or other relevant community". Majority, at 500-01.

As a general rule, adherence to prior decisions is "necessary to preserve the certainty, stability and symmetry of our jurisprudence". *State ex rel. Yates-American Mach. Co. v. Superior Court*, 147 Wash. 294, 298, 266 P. 134 (1928). There are indeed cases where the changing times require a court to reconsider a prior decision, but to overrule that prior decision should be a last resort. Otherwise, the courts and practitioners would never be certain of their knowledge of the law.

Since this case concerns the scope of a rule promulgated and interpreted by this court, overruling prior law is not the only alternative, nor do I think it is the best approach to take. The Supreme Court is expressly granted broad rule-making authority concerning the practice of "taking and obtaining evidence". RCW 2.04.190. Specifically, ER 608(a) was created pursuant to that authority. If the rule's interpretation should be changed, relying on the court's rule-making authority to increase the scope of ER 608(a) would promote simplifying the judicial system by limiting the need

to reconcile the rule with numerous cases interpreting it throughout the past and present. Furthermore, it would provide a forum for input, discussion and reflection. *See* GR 9.

The approach taken by the majority, on the other hand, promotes confusion by disrupting an established area of practice without providing adequate guidance on how to proceed. This new interpretation now places on the trial court judge the initial task, on a case-by-case basis, of determining the new parameters of the rule with little guidance from the majority. Thus, the end result will be more confusion and more appeals. This matter is better resolved by the rule-making process.

UTTER and SMITH, JJ., concur with JOHNSON, J.