IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79357-8-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| TANAR McKENZIE, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | FILED: March 9, 2020 |

SMITH, J. — The State charged Tanar McKenzie with second degree assault with a deadly weapon after he struck his mother with a cane and allegedly threatened her with the 13-inch knife that was sheathed inside its handle. At trial, the State introduced testimony by two officers who arrested McKenzie. The testimony included improper ER 404(b) evidence of past criminal conduct. McKenzie moved for a mistrial, which the trial court denied. Because the irregularities regarding the testimony were not serious, there was not a substantial likelihood that the irregularities affected the jury's verdict. Thus, we affirm the conviction. However, because McKenzie previously had a DNA (deoxyribonucleic acid) sample collected, the trial court erred in imposing the $100 DNA fee. Therefore, we remand for the trial court to strike the fee.

FACTS

McKenzie suffered a compound fracture of his leg in 2017, which required him to use a walker and then a cane. His mother, Laura Cooper, with whom he lived, took off a month of work to "help take care of him." Cooper testified that at the time, McKenzie "became difficult" to care for and "became abusive." Cooper explained that on one

occasion, McKenzie "kind of hit [her] on [her] legs" with his walker. Further, she

recounted another experience where McKenzie "grabbed a knife off the counter [and]

. . . was going to swing it at [her]."

Cooper testified that on October 27, 2017, McKenzie was sleeping on the couch

and "yell[ed]" at her to come into their living room. When she told McKenzie to "give

[her] a moment," McKenzie came "storming in" using his cane and asked, "[B]itch, didn't

you hear me calling you[?]" She testified that when she again told McKenzie to give her

a moment,

> [McKenzie] hit me on my leg. And then he started in an upward motion,
> and so I turned over on my side and put my arm up, and he hit me in the
> back of the head and then—with his cane. And then I went—kind of
> ducked down more, and he hit me a couple of times on my back.
>
>      . . . .
>      . . . [H]e pulled the knife out of the cane . . . and had it up in the air.
> He was threatening . . . me with that knife.[1]

McKenzie took Cooper's cell phone as he left the room, and Cooper testified that she

"was scared for [her] life." As such, she drove to her daughter's home and waited for

her to return. After waiting for around 30 minutes, Cooper drove to a nearby hospital

and borrowed someone's phone to call 911. During the 911 phone call, which was

played at trial, Cooper alleged that McKenzie had been "abusing [her]" and "hitting [her]

with his cane and stuff."

McKenzie testified that he "had been drinking" that night. And originally, he

testified that he could not "remember what [the argument] was about" but later

explained that he was asking Cooper to take the trash out. McKenzie admitted that he

---

[1] At McKenzie's home, Officer Zachary Rockseth confiscated a cane with a knife measuring "[a]bout 13 inches."

"took the cane and hit her on the top of the leg" and "tapped her twice" on the shoulder.[2] He also admitted to taking Cooper's cell phone "because she had kind of gotten into the habit of calling the police whenever [they] got into an argument." Additionally, he admitted that they had previously got into "a little scuffle" when he was using his walker. He denied, however, wielding a knife or threatening her with one on the night of the incident or prior to.

The State charged McKenzie with second degree assault with a deadly weapon against a family or household member, a crime of domestic violence. Before trial, McKenzie moved to exclude prior bad act evidence against him. The court granted the motion with respect to McKenzie's prior convictions. However, the court allowed the State to put forth potential prior bad act evidence of McKenzie's "behavior leading up to th[e] incident."

At trial, Federal Way Police Officers Zachary Rockseth and Robert Bracco testified that on October 27, 2017, they were dispatched to St. Francis Hospital in Federal Way, Washington, where they met Cooper. Officer Rockseth took Cooper's statements, and he testified that he observed "some red markings" on Cooper's back that were "noticeable to the eye." But the marks are not clearly visible in the pictures that Officer Rockseth took at the scene and that the State entered into evidence at trial.

Officer Rockseth testified that after speaking with Cooper, he and Officer Bracco accompanied other officers to McKenzie's residence. Upon arrival, Officer Bracco observed a man with a leg cast and crutches come out of the woods near the residence.

---

[2] McKenzie also confirmed that he "testified . . . that [he] hit her on the leg and then hit her on the shoulder at least twice."

When asked whether "other elements . . . of the description that was provided . . . match[ed McKenzie's description]," Officer Rockseth answered that McKenzie also matched the description for "an Ingress booking photo, so it's the booking photo that's used for King County." McKenzie objected outside the presence of the jury and moved for a mistrial. The State recommended that the court provide a curative instruction to the jury. But McKenzie's counsel determined that an instruction to disregard the statement would only serve to highlight it. The trial court reserved its ruling on the motion for a mistrial. After, in the presence of the jury, the State further questioned Officer Rockseth on the issue, and Officer Rockseth elaborated that he also verified McKenzie's identity through a Department of Licensing photo.

Officer Bracco testified that while apprehending McKenzie—but before he told McKenzie he was being arrested for assault—McKenzie "was saying how his mother [wa]s making up the story about the assault." Officer Bracco testified that McKenzie stated, "He was glad he was going to jail before he killed someone." Officer Bracco then testified regarding the exchange between himself and McKenzie:

Q. And what did he specifically say that he did not care about?

A. Can I refer from my report?

Q. Absolutely. And I would just make sure that we're being very specific about what the response—or what he says in response to saying he didn't care about.

A. He was ranting about how he kidnapped some—

Q. Oh. So again I want to be very specific.

A. Uh-huh.

Q. What specifically did he say he didn't care about?

4

A. About going to jail.

McKenzie again moved for a mistrial based on Officer Bracco's reference to his prior kidnapping conviction. McKenzie argued that the cumulative effect of both officers' statements could not "be remedied by a limiting instruction." The following day, the trial court entered an oral ruling denying McKenzie's motion for mistrial. Specifically, it found that the booking photo testimony was "not so overly prejudicial as to trigger a mistrial" and that the kidnapping testimony was not "manifestly prejudicial."

A jury convicted McKenzie as charged. The court sentenced McKenzie and ordered the payment of a $500 victim penalty assessment and a $100 DNA collection fee. McKenzie appeals.

## ANALYSIS

### Mistrial

McKenzie contends that the trial court erred when it denied his motion for a mistrial. We disagree.

The State acknowledges that the testimony was improper evidence under ER 404(b). We review a court's denial of a motion for mistrial for abuse of discretion. State v. Rodriguez, 146 Wn.2d 260, 269, 45 P.3d 541 (2002). "'The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly.'" State v. Johnson, 124 Wn.2d 57, 76, 873 P.2d 514 (1994) (quoting State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)). To this end, we recognize that "[t]he trial court is in the best position to determine if a trial irregularity caused prejudice." State v. Wade, 186 Wn. App. 749, 773, 346 P.3d 838 (2015). And we overturn "[a] trial court's denial of a motion for

mistrial . . . only when there is a 'substantial likelihood' that the error prompting the request for a mistrial affected the jury's verdict." Rodriguez, 146 Wn.2d at 269-70 (internal quotation marks omitted) (quoting State v. Russell, 125 Wn.2d 24, 85, 882 P.2d 747 (1994)). To determine whether the improper testimony "may have influenced the jury," we consider "(1) the seriousness of the irregularity, (2) whether the statement in question was cumulative of other evidence properly admitted, and (3) whether the irregularity could be cured by an instruction to disregard the remark, an instruction which a jury is presumed to follow." State v. Escalona, 49 Wn. App. 251, 254, 742 P.2d 190 (1987) (citing State v. Weber, 99 Wn.2d 158, 165-66, 659 P.2d 1102 (1983)).

Our opinion in Wade is instructive. A jury convicted Gary Wade of the second degree murder of Michelle Thornton. Wade, 186 Wn. App. at 754. Wade's DNA matched the DNA profile found on Thornton's body, there was substantial surveillance video evidence of him entering Thornton's apartment building near the time of her death, and Wade admitted that he "plac[ed] Thornton in the closet after she had a heart attack." Wade, 186 Wn. App. at 759. In contrast to Wade's testimony, medical expert testimony found that Thornton "died of asphyxia from strangulation." Wade, 186 Wn. App. at 760.

At trial, Detective Moore testified that a fellow detective "'notified [him] that . . . Wade . . . had been booked into King County Jail recently prior to that.'" Wade, 186 Wn. App. at 774. And "[w]hen asked if he had a photograph to aid him in identifying Wade, Detective Moore replied, 'Yes[,] we had a recent booking photo.'" Wade, 186 Wn. App. at 774 (second alteration in original). The jury was instructed that Detective Moore's reference was to a misdemeanor drug violation that "'was unrelated to the

investigation of this case.'" Wade, 186 Wn. App. at 774. Wade moved for a mistrial, which the trial court denied. Wade, 186 Wn. App. at 773. On appeal, we concluded that the trial court did not abuse its discretion because "the testimony referring to a booking photograph did not indicate that Wade had a propensity to commit murder or that he had even been previously convicted of a crime," and the reference was cured by the stipulation. Wade, 186 Wn. App. at 775; see also State v. Gilcrist, 91 Wn.2d 603, 612, 590 P.2d 809 (1979) ("A mistrial should be granted only when 'nothing the trial court could have said or done would have remedied the harm done to the defendant.'" (quoting State v. Swenson, 62 Wn.2d 259, 280, 382 P.2d 614 (1963), overruled on other grounds by State v. Land, 121 Wn.2d 494, 851 P.2d 678 (1993))).

Here, the irregularities at trial are less serious than those in Wade. Officer Rockseth's testimony gave less detail, and he mentioned a booking photo but did not refer to McKenzie's time in jail. And the "mere fact that someone has been to jail does not indicate a propensity to commit" the charged crime. State v. Condon, 72 Wn. App. 638, 649, 865 P.2d 521 (1993). Officer Bracco only mentioned that McKenzie "was ranting about how he kidnapped some—." And like in Wade, the testimony did not indicate that McKenzie had the propensity to commit assault or that "he had even been previously convicted of a crime." Wade, 186 Wn. App. at 775. In fact, the testimony does not make clear any of the context. Both officers provided no details of McKenzie's convictions during their ambiguous testimony. And while the testimony was not cumulative of any other testimony or evidence, as McKenzie's counsel below recognized, a curative instruction would have served only to highlight the improper testimony. But without knowing that McKenzie was previously convicted of kidnapping

and in the context of both McKenzie's erratic behavior as testified to by both officers and his drinking the night of the incident, the testimony was not "'of such a nature as to likely impress itself upon the minds of the jurors.'" But cf. Escalona, 49 Wn. App. at 255 (holding that the statement that the defendant "'already has a record and had stabbed someone'" could not be cured by an instruction to the jury in a trial for second degree assault with a deadly weapon) (quoting State v. Miles, 73 Wn.2d 67, 71, 436 P.2d 198 (1968)). Finally, the testimony was insignificant given McKenzie's admission that he hit Cooper with his cane. Because it is clear that there is not a substantial likelihood that the irregularities, even cumulatively, affected the jury's determination of McKenzie's credibility or of his guilt, the trial court did not abuse its discretion.

### DNA Fee

McKenzie asserts that because he has already provided his DNA sample due to a prior felony conviction in King County, the $100 DNA collection fee should be stricken. The State concedes. We accept the State's concession.

We affirm the conviction and sentence but remand for the trial court to strike the $100 DNA collection fee.

Smith, J.

WE CONCUR:

Leach, J.

Dwyer, J.

8